**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2279

IN RE: INTEGRATED HEALTH SERVICES, INC., et al,
Debtors

C. TAYLOR PICKETT,
Appellant

v.

INTEGRATED HEALTH SERVICES, INC.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
D.C. Civil No. 04-cv-00354
District Judge: The Honorable Gregory M. Sleet

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2007

Before: RENDELL, BARRY, and CHAGARES, Circuit Judges

(Filed: April 11, 2007)

OPINION

BARRY, Circuit Judge

Appellant, C. Taylor Pickett, appeals from a final order of the District Court

affirming the Bankruptcy Court's grant of summary judgment to Integrated Health Services, Inc. ("Integrated Health").[1]  For the following reasons, we will affirm the order of the District Court.

## I.

In 1993, Integrated Health joined Caves Valley Golf Club as a corporate member. It paid $75,000 and was issued stock certificates in the club.  Pursuant to the club's bylaws, the stock certificates and membership cannot be sold or assigned without consent.

Pickett served as Integrated Health's Executive Vice President and Chief Financial Officer.  According to Pickett, in recognition of his service to the company, in December 1998 Integrated Health transferred "all of its rights, title and interests in and to the Membership" to him. Appellant's Br. at 6.  That transfer was memorialized by a March 24, 1999 memo from Robert N. Elkins, Integrated Health's Chief Executive Officer and President, which stated:

> This memorandum confirms the agreement between you and IHS regarding the Caves Valley membership.  IHS has assigned to you all its rights, title, and interest related to the membership.  You shall remain the IHS designated member unless you resign the membership or you are terminated for cause.  You shall be personally responsible for all dues, fees and assessments (to the extent not paid by IHS as reimbursable business expenses), including all capital charges assessed by Caves Valley. I appreciate all of your continuing efforts on behalf of IHS.

---

[1] As purchaser of the stock of Integrated Health, which filed for Chapter 11 bankruptcy in 2000, Abe Briarwood Corp. is Integrated Health's successor-in-interest and appellee in this action.

App. at 85 ("Elkins Memo").  Pickett did not take possession of the stock certificates in the club or report the transfer as income or executive compensation.

On February 2, 2000, Integrated Health filed for relief under Chapter 11 of the Bankruptcy Code.  In its filings with the Bankruptcy Court, which were signed by Pickett as its Chief Financial Officer, Integrated Health included the membership in Caves Valley Golf Club as a long-term asset.

Pickett remained with Integrated Health until December 31, 2001.  At that time, Pickett and the company executed an agreement in which he "waive[d], relinquishe[d], release[d], acquit[ted], and forever discharge[d] the IHS Group from any and all claims . . . arising out of or in any manner connected with [his] agreements with the IHS Group up to the date on which this Agreement is fully executed." App. at 246 ("Letter Agreement").  Following this parting of the ways, Pickett continued to use the golf club and pay the annual dues required for membership.  In August 2002, Integrated Health asked the club to remove Pickett as its corporate designee.

Pickett brought this action in Bankruptcy Court seeking a declaratory judgment that he is the owner of the membership and therefore that it is not part of Integrated Health's bankruptcy estate.  By Opinion and Order dated January 9, 2004, the Bankruptcy Court granted summary judgment for Integrated Health.  See Pickett v. Integrated Health Servs., Inc. (In re Integrated Health Servs., Inc.), 304 B.R. 101 (Bankr. D. Del. 2004). The Court ruled that the Elkins Memo is ambiguous and that the evidence clearly shows

that the parties did not intend to assign the membership to Pickett. It found Pickett's remaining arguments meritless. Pickett appealed and the District Court affirmed the Bankruptcy Court's order.

We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291. Our review of the District Court's order affirming the grant of summary judgment is plenary. See Rosen v. Bezner, 996 F.2d 1527, 1530 & n.2 (3d Cir. 1993). We "may affirm the district court's order if, when viewing the evidence in the light most favorable to the non-moving party, there is 'no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " Reese Bros., Inc. v. United States, 447 F.3d 229, 232 (3d Cir. 2006) (quoting Fed. R. Civ. P. 56(c)).

## II.

Pursuant to Maryland law,[2] the validity and scope of a purported assignment is determined by analyzing the intent of the parties, which is done by considering what reasonable persons in the position of the parties would have thought the language of the agreement at issue meant. Hernandez v. Suburban Hosp. Ass'n, 572 A.2d 144, 147 (Md. 1990); James v. Goldberg, 261 A.2d 753, 757 (Md. 1970). Considering the agreement as a whole, if that construction yields a single unambiguous interpretation, the Court must give effect to that plain meaning. See Turner v. Turner, 809 A.2d 18, 49 (Md. Ct. Spec.

---

[2] Applying Delaware choice of law rules, the Bankruptcy Court determined that Maryland law should be used to determine the validity and scope of the Elkins Memo. Neither party disputes this finding.

4

App. 2002); B & P Enters. v. Overland Equip. Co., 758 A.2d 1026, 1037 (Md. Ct. Spec. App. 2000).  If the language is susceptible to more than one construction, then the Court may use extrinsic evidence, including the "subsequent conduct of the parties[,] as an aid to its interpretation." Globe Home Improvement Co. v. McCarty, 105 A.2d 216, 218 (Md. 1954); see also Solomon's Marina, Inc. v. Rogers, 156 A.2d 432, 434 (Md. 1959); Evergreen Amusement Corp. v. Milstead, 112 A.2d 901, 903 (Md. 1955).  The Court may construe an ambiguous agreement when no disputed facts are at issue. See Pac. Indem. Co. v. Interstate Fire & Cas. Co., 488 A.2d 486, 489 (Md. 1985); cf. Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 137 (3d Cir. 1993).

### III.

Pickett argues that the Bankruptcy Court erred in holding that the Elkins Memo is ambiguous.[3]  Further, he contends that even if it were deemed to be ambiguous, the evidence shows that the parties intended it to be an unqualified assignment of all of Integrated Health's interest in the club.  We disagree.

First, we agree with the Bankruptcy Court that the Elkins Memo is ambiguous.[4] Although, as Pickett points out, the Memo says that "IHS has assigned to you all its

---

[3] The District Court order from which Pickett appeals simply "holds that the bankruptcy court's order of April 19 was the proper disposition regarding the outstanding motions." App. at 11.

[4] Although Pickett alleges that the club membership was initially assigned to him in December 1998, he relies solely on the Elkins Memo in support of that assignment.

rights, title, and interest related to the membership," it further provides that "[y]ou shall remain the IHS designated member unless you resign the membership or you are terminated for cause." App. at 85 (emphasis added). As the Bankruptcy Court pointed out, "[w]hile the use of the word 'assigns' would normally indicate an intent to give away the Membership, the phrase 'corporate designee' implies that there was only an intent to allow the use of the corporate membership for a specified time," Pickett, 304 B.R. at 107–08, especially as the Memo provides for two instances in which Integrated Health could effectively strip Pickett of his membership rights. Given these contradictory phrases, we find that the Elkins Memo is not susceptible to being read in an unambiguous fashion.

Second, we agree with the Bankruptcy Court that the extrinsic evidence shows that the parties understood the Elkins Memo as providing something other than an assignment of all of Integrated Health's rights in the club.

First, membership in the club is not assignable without the club's consent. Although this restriction is not dispositive, see Pickett, 304 B.R. at 106–07, it is certainly a factor which weighs against reading the Elkins Memo as providing for an assignment, especially as neither party sought the consent of the club, App. at B88–89.

The actions of both parties subsequent to the dissemination of the Elkins Memo also clearly reveal an understanding of the Memo's limited scope. Integrated Health continued to include the membership as a long-term asset on its books, even in

bankruptcy court schedules signed by Pickett himself. Furthermore, Pickett did not take possession of the stock certificates or list the assignment as income or executive compensation in the company's public filings. All of these actions and inactions show an understanding by the parties that Integrated Health retained ownership of the club membership following the dissemination of the Memo.[5]

Finally, although both parties discuss at length the effect of the Letter Agreement on the rights conferred by the Elkins Memo, given that the Memo did not assign the rights in the club to Pickett we see no reason to address this or related issues.[6] We agree with the Bankruptcy Court that the remainder of Pickett's arguments are without merit.

### IV.

For the foregoing reasons, we will affirm the order of the District Court.

---

[5] Despite the strength of the evidence supporting a narrow reading of the rights conferred by the Elkins Memo, Pickett contends that the Bankruptcy Court erred in finding that no assignment took place. According to Pickett, the Court "ignored the only summary judgment evidence regarding the intent of the parties to the Elkins Memo"—his affidavit. Appellant's Br. at 12. In that affidavit, Pickett states that the intent of the Memo "was to permanently assign and convey to me all of IHS's rights, title and interests in and to the Membership, including, without limitation, all privileges and benefits thereto." App. at 144. The Court found this affidavit to be irrelevant because "his testimony as to a legal conclusion . . . is [not] proper[] evidence on that point" and was, regardless, "not compelling." App. at B146. We find no error.

[6] In his Complaint, Pickett asserts that he is the owner of the membership or, alternatively, that Integrated Health is equitably estopped from changing its position in this litigation. He does not assert that the Elkins Memo created contract rights which have been subsequently breached by Integrated Health. App. at 80–82; see Pickett, 304 B.R. at 110 & n.2. We see no reason to address such arguments on this appeal.